UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Prince T. Tyler, III and Shari K. Tyler,<br><br>Debtors. | Chapter 7 Case<br>BKY. No. 12-30880 |
| MacArthur Company, Inc. d/b/a<br>Milwaukee Insulation Company, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Prince T. Tyler, III and Shari K. Tyler,<br><br>Defendants. | ADV. No. 12-03106<br><br>Order on Cross Motions<br>for Summary Judgment |

This case is before the court on cross-motions for summary judgment in this nondischargeability action brought under 11 U.S.C. § 523(a)(4).

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 1070-1. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**FACTS**

The defendants filed a joint chapter 7 petition and the plaintiff subsequently filed a complaint (later amended) commencing this adversary proceeding. The amended complaint seeks a monetary judgment against the defendants and a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(4).

1

The parties submitted stipulated facts and agreed that the material facts are not in dispute and that this proceeding could be determined on the stipulated facts, cross motions for summary judgment, briefs and affidavits.[1]  The parties' stipulated facts include the following:

The plaintiff, MacArthur Company, Inc. ("MacArthur"), is a Wisconsin corporation engaged in the business of selling roofing materials. The co-defendant, Prince T. Tyler, III ("Prince Tyler"), was an owner and chief executive officer of the Minnesota corporation, ARI Construction Inc. ("ARI").  ARI provided roof repair and installation services.

MacArthur sold roofing materials and supplies on credit to ARI.  ARI used these materials and supplies for projects located in Nebraska and Colorado.[2]  ARI received payment for these projects from its customers, although not always in full, and applied these proceeds to the costs and expenses associated with the contracts and to pay ARI's administrative overhead and expenses.  "Generally ARI did not maintain segregated escrow accounts for the separate roofing projects and the proceeds received from its customers were paid into ARI's general business account and used to pay operating business expenses including expenses of the projects and administrated [sic] overhead, related payroll and other similar expenses.  The expenses and wages to the owners of ARI… [the defendants], in the amount of… $143,926.00 were paid from

---

[1] Stip. Facts, ECF No. 32.  (The stipulated facts are also found elsewhere in the case docket but this reference will be used here.)  In addition to the stipulated facts, the court reviewed one affidavit submitted by the plaintiff and three by the defendants in this adversary proceeding:  Still Aff. 9, ECF No. 17; Prince Tyler Aff. 1, ECF No. 16-1; Prince Tyler Aff. 4, ECF No. 32; Shari Tyler Aff. 1, ECF No. 16-2.  (The affidavits are also found at other docket entries but the above entries will be used here.)  Except as discussed in footnote 12, additional assertions of fact otherwise made by the parties were not considered in resolving this dispute.
[2] Schedules 1 and 2, attached to the stipulated facts, identify the projects, the invoiced amount due for the materials, the amount paid for the materials, and the balance due pursuant to the invoices for the materials.

2

funds or received from customers." Stip. Facts 2-3, ECF No. 32. MacArthur was not paid in full for the materials and supplies used in these projects.[3]

## SUMMARY OF ARGUMENTS AND ISSUES

The parties argue that determining which state law applies is critical to resolve whether the requisite fiduciary relationship exists under § 523(a)(4) and ask the court to engage in a choice-of-law analysis to that end.[4]

In contrast to its amended complaint, the plaintiff argues in its motion that Colorado law applies to all transactions related to projects located in Colorado and that Minnesota law applies to all transactions related to projects located in Nebraska.[5] The defendants agree that Colorado law applies to projects located in Colorado, but asserts that Nebraska law applies to projects located in Nebraska, and that Minnesota law does not apply at all.

The defendants argue in the alternative that if Minnesota law does apply, it should apply to all of the transactions and that Minnesota law does not establish the requisite fiduciary relationship under § 523(a)(4).

The defendants' ultimate argument, however, is that regardless of which state law applies, any liability to the plaintiff is properly discharged because even if the requisite fiduciary

---

[3] Although not expressly stated in the stipulated facts, Schedules 1 and 2 attached to the stipulated facts list balances due to MacArthur.
[4] The state laws at issue are those cited below of Colorado and Minnesota. No other basis for the existence of a trust is asserted, such as other statutes, common law, or contract, and accordingly no other basis for the creation of the requisite trust is considered here.
[5] The plaintiff in its amended complaint asserts that Minnesota law governs all of the transactions and that the defendants "may also be subject to the laws of the State of Colorado…." Pl.'s Am. Compl. 14, ECF No. 20-2.

3

relationship was created, the additional requirements of "fraud or defalcation" under 523(a)(4) do not exist.[6]

Focusing solely on whether state law creates a trust and the state law treatment of a breach of the trust ignores the overlay of the Bankruptcy Code. Having considered the arguments of the parties and applicable law, the question is not which state law applies but rather, do either of the applicable Colorado or Minnesota statutes[7] establish the required fiduciary capacity to create a nondischargeable liability as "fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4)?[8]

## DISCUSSION

### Summary Judgment

Summary judgment, as set forth in Rule 56, is proper if "the movant shows that there is no genuine dispute as to any material fact. . . ." Fed. R. Civ. P. 56(a).[9] A genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v.*

---

[6] While both parties focus most of their attention on the foregoing issues, additional defenses are discussed including the "corporate veil" and defenses specific to the defendant Shari K. Tyler. It is unnecessary to address these here given the resolution of this proceeding on other grounds.

[7] The plaintiff concedes that Nebraska law does not create a fiduciary relationship in this case. Pl.'s Mem.Supp. Supp. J. 6, ECF No. 36. Moreover, citing *Devaney v. Dloogoff* (*Matter of Dloogof*), 600 F.2d 166 (8th Cir. 1979), the defendants assert that the Eighth Circuit has previously determined that the applicable Nebraska statute does not establish a fiduciary relationship or create a nondischargeable claim. Although *Dloogof* was decided under the Bankruptcy Act, I agree that the Eighth Circuit has already decided this issue. That is, the fiduciary capacity required for a debt not to be discharged under § 523(a)(4) is not created pursuant to the applicable Nebraska statute. *Id*. at 170. Accordingly, further discussion of Nebraska law is unnecessary.

[8] Although the parties refer generally to § 523(a)(4) in their pleadings, the parties discuss only its first clause ("fraud or defalcation while acting in a fiduciary capacity"). This section of the Bankruptcy Code also includes a following phrase "embezzlement, or larceny" as grounds for an exception to discharge. As the parties do not assert these provisions, and in any event, no or insufficient facts are asserted to support either ground, they are not considered in this opinion. *See, e.g., Reshstar Sys., Inc. v. Thompson (In re Thompson),* 686 F.3d 940, 947 (8th Cir. 2012) (stating the requirements for embezzlement and larceny under 523(a)(4)).

[9] Applicable here by Fed. R. Bank. P. 7056.

4

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When ruling on a summary judgment motion, "[t]he court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Enter. Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Furthermore, summary judgment is appropriate when the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The parties have stipulated that this matter may be resolved on motions for summary judgment.

### Nondischargeability under § 523(a)(4)

*Fiduciary Capacity*

Section 523(a)(4) excepts from discharge a "debt – for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). The Eighth Circuit has addressed this section of the Bankruptcy Code in several opinions; it has provided unambiguous guidance for its application generally and also specifically to the Minnesota statute at issue. *See, e.g., Thompson,* 686 F.3d at 944–46. The Eighth Circuit construes this exception narrowly, placing the burden on the creditor to prove that an exception to discharge is applicable. *Arvest Mortg. Co. v. Nail (In re Nail)*, 680 F.3d 1036, 1038 (8th Cir. 2012). Its applicability is not created "by the simple

5

incantation of the terms 'trust' or 'fiduciary'" in a state statute. *Id.* at 1040 (citing *Texas Lottery Comm'n v. Tran (Matter of Tran)*, 151 F.3d 339, 342-43 (5th Cir. 1998). The term "fiduciary" in § 523(a)(4) refers only to trustees of "express trusts." *Hunter v. Philpott*, 373 F.3d 873, 875 (8th Cir. 2004) (citing *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 975, 878 (8th Cir. 1992). The term does not encompass trustees of "constructive trusts imposed by law because of the trustee's malfeasance." *Id.* at 876. Rather, bankruptcy courts must look to the substance of a transaction in deciding whether a person is a fiduciary within the meaning of the statute. *Id.* "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto." *Thompson,* 686 F.3d at 944 (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934).

In this case, the plaintiff argues that debt created under Minn. Stat. § 514.02 or Colo. Rev. Stat. § 38-22-127 is nondischargeable under § 523(a)(4).

Minn. Stat. § 514.02 provides:

> Proceeds of payments received by a person contributing to an improvement to real estate within the meaning of section 514.01 *shall be held in trust* by that person for the benefit of those persons who *furnished* the labor, skill, material, or machinery contributing to the improvement. Proceeds of the payment are not subject to garnishment, execution, levy, or attachment. *Nothing contained in this subdivision shall require money to be placed in a separate account and not commingled with other money of the person receiving payment or create a fiduciary liability* or tort liability on the part of any person receiving payment or entitle any person to an award of punitive damages among persons contributing to an improvement to real estate under section 514.01 for a violation of this subdivision.

Minn. Stat. § 514.02, subd. 1(a) (emphasis added).

6

Similarly, Colo. Rev. Stat. § 38-22-127 provides:

> (1) All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project *shall be held in trust* for the payment of the subcontractors, laborer or material suppliers, or laborers who have *furnished* laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made. (2) This section shall not be construed so as to require any such contractor or subcontractor to hold in trust any funds which have been disbursed to him or her for any subcontractor, laborer or material supplier, or laborer who claims a lien against the property or claims against a principal and surety who has furnished a bond under the provisions of this article if such contractor or subcontractor has a good faith belief that such lien or claim is not valid or if such contractor or subcontractor, in good faith, claims a setoff, to the extent of such setoff. (3) If the contractor or subcontractor has furnished a performance or payment bond or if the owner of the property has executed a written release to the contractor or subcontractor, he need not furnish any such bond or hold such payments or disbursements as trust funds, and the provisions of this section shall not apply. (4) Every contractor or subcontractor shall maintain separate records of account for each project or contract, *but nothing contained in this section shall be construed as requiring a contractor or subcontractor to deposit trust funds from a single project in a separate bank account solely for that project so long as trust funds are not expended in a manner prohibited by this section.*

Colo. Rev. Stat. § 38-22-127 (emphasis added).

In essence, both statutes seek to protect unpaid contractors and suppliers through the creation of a statutory trust. However:

> It is not enough [] that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.' Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose 'trust-like' duties.

*Nail*, 680 F.3d at 1040 (quoting *Tran*, 151 F.3d at 342–43).

In this case, the relevant statutes do not create the relationship necessary to satisfy § 523(a)(4).

Regarding the Minnesota statute, the Eighth Circuit has already addressed the interplay between the statutory trust created specifically under Minn. § Stat. 514.02 and the requirements of § 523(a)(4). In *In re Thompson*, the Eighth Circuit definitively stated that Minn. Stat. § 514.02 does not create the requisite fiduciary capacity to satisfy § 523(a)(4). 686 F.3d at 946. The Court first determined that an express trust cognizable under § 523 is not created by this Minnesota statute because it specifically states that its violation will not result in the creation of a fiduciary relationship. *Id.* at 945. The Court then continued with a clear directive and discussion stating that even if the Minnesota statute created such an express trust, the Court's conclusion would remain unchanged; the statute does not satisfy the requirements of § 523(a)(4) because the statute does not require funds to be put into separate accounts or impose "affirmative 'trust-like' duties such as detailed record keeping." *Id.* at 945–46. "Even more significantly… the purported trust is not created *until the subcontractor has a contractual right to be paid.* For a debt to be nondischargeable…the debtor 'must have been a trustee before the wrong and without reference thereto.'" *Id.* at 946 (citing *Davis*, 293 U.S. at 333). The law in this jurisdiction is clear; under these circumstances, Minn. Stat. § 514.02 does not create the required fiduciary relationship necessary for application of § 523(a)(4).

Applying the same analysis to Colo. Rev. Stat. § 38-22-127 results in the same outcome. And the outcome is the same even though the Colorado statute does not have a provision similar to the provision in the Minnesota statute which provides that its violation will not result in the creation of a fiduciary relationship. As discussed above, this provision was used by the

8

*Thompson* Court to determine that there was no express trust created for the application of § 523(a)(4). But the *Thompson* Court provided further guidance and stated that even if the statute created an express trust, the Minnesota statute "did not create a fiduciary responsibility in the 'strict and narrow sense' that § 523(a)(4) requires. 'It is not enough that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary." Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties.'" *Id*. at 945 (citing *In re Nail*, 680 F.3d at 1040). The *Thompson* Court then discussed and applied the requirements of § 523(a)(4) to the Minnesota statute to reach the same outcome. *Id*. at 945–46. The application of these requirements of § 523(a)(4) to the Colorado statute has the same result. This reflects the similar, although not identical, relevant terms of the Minnesota and Colorado statutes.

Like its Minnesota counterpart, the Colorado statute does not require the use of separate accounts. It provides an exception by stating that a separate bank account is not required "…so long as trust funds are not expended in a manner prohibited by this section." Colo. Rev. Stat. § 38-22-127. But this is an exception and as a practical matter it has no effect; the statute provides that a separate account is not required unless the funds are expended in a prohibited manner but then, at that point, there are no funds that exist to create a separate account. These words do not create the required trust or otherwise create the required fiduciary relationship.

Regarding the imposition of "trust-like" duties, the Colorado statute does require, unlike the Minnesota statute, that separate records of account be maintained, but it does not impose other "trust-like" duties. This one duty is insufficient to create the fiduciary relationship required to deny the discharge of a debt. *See, e.g. Nail*, 680 F.3d at 1040–41. Moreover, this statute does

9

not impose other "trust-like" duties including similar duties required under Colorado's laws regulating the conduct of fiduciaries. *See, e.g.,* Colo. Rev. Stat. § 15-1-304. For example, Colorado fiduciary law requires trustees to act impartially in investing and managing trust assets. Colo. Rev. Stat. § 15-1.1-106. It also requires diversification of those assets. Colo. Rev. Stat. § 15-1.1-103. Neither of these or similar requirements are contemplated by the statute at issue. *See, e.g.,* Colo. Rev. Stat. § 15-1.1-105.

Finally, the Colorado statute does not satisfy the last but deemed significant factor considered by the *Thompson* Court, that is the requirement of § 523(a)(4) broadly stated that the debtor "must have been a trustee before the wrong and without reference thereto." *Thompson*, 686 F.3d at 944 (citing *Davis*, 293 U.S. at 333). Applying this factor specifically to the Minnesota statute, the Eighth Circuit noted that "the statute only applies to proceeds received for the benefit of subcontractors 'who *furnished*' labor or materials…. [The statute] is not violated unless 'others contributed labor, skills, [or] material….'"*Thompson, 686 F.3d* at 946 (citing *State v. Holmes*, 787 N.W.2d 617, 623 (Minn.App.2010)). The text of the Colorado statute is almost identical. By the terms of the Colorado statute, it applies to those "who have furnished laborers, materials…" Colo. Rev. Stat. § 38-22-127. The Court continued, "[i]n other words, the purported trust is not created *until the subcontractor has a contractual right to be paid*." *Id.* at 946. Moreover, as stated by the Eighth Circuit prior to the *Thompson* decision and restated in *Thompson* with respect to the more specific Minnesota statute, "[s]ection 523(a)(4)… does not embrace trustees of constructive trusts imposed by law because of the trustee's malfeasance." *Id.* at 944 (citing *Hunter,* 373 F.3d at 876).

The plaintiff asserts, citing *ASCI Readi-Mix & Asphalt Specialties, Co. v. Gamboa (In re Gamboa)*, 400 B.R. 784 (Bankr. D. Colo. 2008), that Colorado courts have determined that violations of the Colorado statute are nondischargeable under § 523(a)(4).  In *In re Gamboa*, the bankruptcy court in the District of Colorado determined that the statutory trust created under Colo. Rev. Stat. § 38-22-127 "satisfies the technical trust element of a fiduciary relationship necessary to establish a 11 U.S.C. § 523(a)(4) claim."  400 B.R. at 789.  That decision is not binding here.  Moreover, the *Gamboa* case was determined prior to the Eighth Circuit setting forth its clearly articulated standard in *In re Thompson,* which governs this proceeding.  While state law is reviewed to determine the type of trust which is created by state law (and even if Colorado state law applies), in determining whether the fiduciary relationship contemplated by § 523(a)(4) is satisfied by such creation, here it is the law of the Eighth Circuit which is applied and governs the outcome. As discussed above, the standard as set forth in *In re Thompson* is not satisfied by a violation of Colo. Rev. Stat. § 38-22-127.  Therefore, this statute does not establish the fiduciary capacity required under § 523(a)(4) to create a nondischargeable liability.

Neither the Minnesota nor Colorado (nor Nebraska) statute establishes a relationship that satisfies the requirement of § 523(a)(4) that the defendants were acting in a "fiduciary capacity."  The Eighth Circuit construes these exceptions to discharge narrowly.  *Nail,* 680 F.3d at 1038.  Thus, any debts of the defendants to the plaintiff are dischargeable.

*Fraud or Defalcation*

The outcome would be the same even if the Minnesota and Colorado statutes satisfied the fiduciary capacity requirements of § 523(a)(4).  For this exception to discharge to apply, there must also be a determination of "fraud or defalcation."  11 U.S.C. § 523(a)(4).  The assertions of

11

"fraud or defalcation" and the facts asserted to support such determinations were minimal and do not support a finding of either under § 523(a)(4).

The Supreme Court, many years ago, described the meaning of fraud in the context of determining whether a debt is to be excepted from discharge. *Neal v. Clark,* 95 U.S. 704 (1878). In conclusion, this fraud means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong…and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Id.* at 709.

The Supreme Court, more recently, discussed the meaning of defalcation in this context. In the case of *Bullock v. BankChampaign, N.A.,* 133 S.Ct. 1754 (2013), the Supreme Court, expressly basing its decision on the *Neal* case and the belief that the "statutory term 'defalcation' should be treated similarly [to the term 'fraud']", held that "defalcation" in § 523(a)(4) includes a scienter requirement of "intentional wrong… [including] not only conduct that the fiduciary knows is improper but also reckless conduct . . . ." *Id.* at 1759. The Supreme Court explained that "reckless" conduct under § 523(a)(4), where actual knowledge of wrongdoing is lacking, arises "if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* (citing ALI, Model Penal Code § 2.02(2)(c)**,** p. 226 (1985)).

The plaintiff first asserts that if a trust was created under Colorado or Minnesota state law and the funds in the trust were not paid to the plaintiff, then "fraud or defalcation" is deemed or assumed to exist under state law.[10] Assuming that a trust for purposes of § 523(a)(4) had been created, this argument is still without merit because a per se violation of either the Colorado or

---

[10] The plaintiff relies on the provisions of the state statutes at issue which refer to their violations as "theft." Colo. Rev. Stat. § 38-22-127(5); Minn. Stat. § 514.02.

12

Minnesota statute will not establish "fraud or defalcation" pursuant to the requirements of the *Neal* or *Bullock* cases. A per se violation ignores the state of mind required by the *Neal* and *Bullock* cases and, among other requirements, the *Neal* and *Bullock* cases provide that "implied fraud, or fraud in law" is insufficient to establish the fraud or defalcation required for an exception to discharge. *Bullock,* 133 S.Ct. at 1759 (citing *Neal*, 95 U.S. at 709).

There are few stipulated facts that could be related to the determination of the existence of fraud or defalcation. The plaintiff notes that the defendant Prince Tyler admits he was the owner and chief executive officer of ARI and that he and defendant Shari Tyler were paid expenses and wages "from funds or received from customers." Stip. Facts 3, ECF No. 32. The parties also stipulated that the proceeds from ARI's customers were applied "to pay for the costs and expenses associated with the contracts and to pay ARI's administrative overhead and expenses." Stip. Facts 2, ECF No. 32. But neither these nor the other stipulated facts are sufficient to support a determination of fraud or defalcation and more is necessary; they do not satisfy the requirement of "moral turpitude or intentional wrong… bad faith or immorality", or a "culpable state of mind…." *Bullock,* 133 S.Ct. at 1757; *Neal*, 95 U.S. at 709.

The plaintiff also refers to the facts asserted in the affidavits of the parties to support a determination of fraud and defalcation, while arguing that the *Bullock* case does not provide a new requirement for finding defalcation in this case.[11] Specifically, the plaintiff relies on two letters which are attached to the original complaint and referenced in an affidavit of defendant

---

[11] The plaintiff also refers to the debtors' bankruptcy schedules for supporting facts (Pl.'s Resp. Defs'. Mot. Summ. J. 2, ECF 41) but the schedules are not part of the record in this adversary proceeding. Even if they were, the outcome would be unaffected.

13

Prince Tyler, and on the affidavit of the plaintiff's credit manager.[12] The defendant Prince Tyler admits in his affidavit that ARI sent the same or similar versions of the two letters to some of ARI's customers. A review of one of these letters (dated May 23, 2011) indicates, among other things, that payment of the balance due is requested and it advises the funds "*will be* [13] used to pay the balance due on the materials" used and that "[d]ue to our IRS taxing requirements, I can not [sic] have you mail the check direct to MacArthur as Diane had formerly requested " (emphasis added). The second letter (dated January 27, 2011) advises that the recipient may have received or may receive a pre-lien or intent to lien from a supplier, and that this is a common business practice. It also states that "we have credit extended to us by our suppliers." The plaintiff, by affidavit of its credit manager, states that the open line of credit for ARI was terminated on or before December 31, 2010. The most troublesome statements are that ARI would use all of the funds paid to it to pay the balance due on materials (which it did not do) and that it had credit extended to it—which it did not, at least not by the plaintiff.

While these statements may not exemplify the best business practices, neither they nor the rest of the record, including the stipulated facts, the affidavits and the letters, demonstrate the conduct necessary for a determination of fraud or defalcation as used in § 523(a)(4) pursuant to the *Neal* or *Bullock* cases.[14] There is insufficient evidence to establish fraud or defalcation. There is no evidence of an intentional wrongdoing by the defendants and no evidence of the defendants' conscious disregard of a risk; summarized, neither the intentional nor the reckless

---

[12] Respectively, Prince Tyler Aff. 3, ECF No. 16-1 and Still Aff. 9, ECF No. 17. The parties never formally put the letters in the record but both are attached to the original complaint, one is attached to the amended complaint, and both are referred to in the affidavit of the defendant Prince Tyler; I considered them to be part of the record.
[13] Ordinarily, fraud requires a misstatement of *present* or *past* fact.
[14] Even if there was a fraud committed arising from the letters sent to ARI's customers, the fraud would be against the customers, not the plaintiff. Moreover, there is no evidence of intent to deceive the plaintiff or that the plaintiff relied on any of the statements contained in the letters.

standard set forth by the Supreme Court in *Bullock* is satisfied.  Moreover, the requirement of moral turpitude or intentional wrong under *Neal* is unsatisfied.

Accordingly, the exception to discharge under § 523(a)(4) for "fraud or defalcation" while acting in a fiduciary capacity does not arise in these circumstances.

**ORDER**

Therefore, it is ordered that:

1. The plaintiff's motion for summary judgment is denied,

2. The defendants' motion for summary judgment is granted;

3. The defendants' debt, if any, is not excepted from the defendants' discharge; and

4. The plaintiff shall recover nothing from the defendants on its complaint.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Date:  *March 28, 2014*                                          /e/ Katherine A. Constantine
                                                                United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/28/2014*
Lori Vosejpka, Clerk, By NAB, Deputy Clerk